UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-02958-B |
| OSCAR HAYNES MORRIS, JR. and LAKESIDE CAPITAL PARTNERS, L.P., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Securities and Exchange Commission ("SEC")'s Amended Motion for Remedies Against Defendants Oscar Haynes Morris, Jr. ("Morris") and Lakeside Capital Partners, L.P. ("Lakeside") seeking both disgorgement and civil penalties. Doc 37, Pl.'s Am. Mot. Remedies. Because the Court finds disgorgement appropriate but declines to impose civil penalties, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion.

### I.

### BACKGROUND

This case concerns an investment adviser's commingling and misappropriation of funds designated for client investors. Specifically, the SEC alleges that Defendants Morris and Lakeside "misappropriated $120,184.38 from two investment funds that were clients managed by Lakeside." Doc. 1, Compl., ¶ 1. Following suit by the SEC, Defendants consented to entry of judgments in the case. Doc. 32, J. Def. Morris; Doc. 33, J. Def. Lakeside. The consent judgments precluded Defendants from challenging the allegations in the SEC's complaint in any motion for

disgorgement or civil penalties. Doc. 32, J. Def. Morris, 3; Doc. 33, J. Def. Lakeside, 3. The Court thus takes the Complaint's allegations as true.

Lakeside is an investment adviser in Dallas, Texas that is wholly owned and controlled by Morris. Doc. 1, Compl., ¶ 10. Morris is the president of Lakeside and the only person performing Lakeside's advisory functions. *Id.* ¶ 11. Between 2016 and 2020, Lakeside had twenty-two private investment funds as advisory clients, two of which were the 974 Oil & Gas Exploration Partnership ("Exploration Fund") and the ACH/2012 Buckingham, L.P. ("Buckingham Fund"). *Id.* ¶ 12.

Morris formed the Exploration Fund in June 2016 and raised $38,000 from three investors to purchase an interest in an East Texas oil-and-gas well. *Id.* ¶ 15. But Morris failed to open a separate bank account for the Exploration Fund after he formed it. *Id.* ¶ 16. In May 2017, the Exploration Fund began receiving returns on the oil-and-gas well investment. *Id.* ¶ 17. Those returns were deposited into the bank account of ACH Management, LLC ("ACH"), a separate company Morris owned and controlled as its managing member. *Id.* Lakeside's Chief Financial Officer ("CFO") [1] warned Morris that the returns were being commingled into ACH's account and used to pay non-Exploration Fund expenses, but Morris and Lakeside took no corrective action. *Id.* ¶ 20. In April 2019, examiners from the SEC's Office of Compliance Inspections and Examinations ("OCIE") identified the misappropriation. *Id.* ¶ 23. Following the SEC's discovery, the Defendants opened a bank account for the Exploration Fund and deposited $57,000 to restore the investment returns plus interest. *Id.*

---

[1] The Complaint refers to this individual as the "Bookkeeper," but the SEC has indicated her proper title is "Chief Financial Officer." Doc. 37, Pl.'s Am. Mot., ¶ 4 n.2. Because this change is non-substantive, the Court adopts the more accurate title.

Morris formed the Buckingham Fund in February 2013 and raised $1.64 million from sixteen investors. *Id.* ¶ 24. Lakeside, with Morris at the helm, served as the Buckingham Fund's adviser, and ACH served as the Fund's general partner. *Id.* The Buckingham Fund ultimately invested in a company that pooled interests in various oil-and-gas wells ("Oil Company"). *Id.* But in March 2016, the Oil Company underwent bankruptcy reorganization. *Id.* ¶ 25. To assist in the Oil Company's recapitalization, Morris arranged for one of the Buckingham Fund's investors to make a loan to the Buckingham Fund. *Id.* Specifically, a fund investor ("Investor") loaned the Buckingham Fund $354,543.19 to purchase a membership interest in a limited liability company formed to recapitalize the original Oil Company. *Id.* The loan was memorialized with a promissory note, which called for the Buckingham Fund to allocate all investment returns to repaying the Investor's loan until the loan was repaid in full. *Id.*; Doc. 9, Defs.' Answer, ¶ 20.

By December 2018, the Buckingham Fund had accumulated $65,000 in investment returns, which were kept in a separate bank account. Doc. 1, Compl., ¶ 27. But instead of allocating the $65,000 to the Investor as promised, on December 26, 2018, Morris transferred the money to ACH's account and then to his personal bank account. *Id.* ¶ 28. He then used the money on personal expenses such as credit-card and car payments. *Id.* Neither Morris nor Lakeside received authorization from or disclosed the transaction to the Buckingham Fund or its investors, including the Investor to whom the returns were owed. *Id.*

Upon discovering the $65,000 transfers, the CFO questioned Morris, who indicated that the Investor had agreed to give him the $65,000 as a personal loan. *Id.* ¶ 29. But when the CFO called the Investor to corroborate Morris's claim, the Investor indicated that he was unaware Morris had taken the $65,000 and denied that Morris had ever sought or obtained a $65,000 loan from him. *Id.* ¶ 30. Morris told SEC examiners in April 2019 the same story: that the Investor had

authorized a loan to him. *Id.* ¶ 31. But later Morris admitted that he had not asked the Investor for a loan and instead claimed that, based on his past relationship with the Investor, he was "certain" the Investor would have approved of the loan based on their past relationship. *Id.* ¶ 33; *see also* Doc. 42, Defs.' Resp. Mot. Remedies, 5 (asserting a "course of dealing").

The SEC filed suit against Defendants Morris and Lakeside in September 2020, alleging various violations of the Investment Advisers Act of 1940. *See* 15 U.S.C. § 80b-1–80b-21; Doc. 1, Compl. After the suit was filed, Morris reached an agreement with the Investor to repay the full balance due to the Investor on the Buckingham Fund loan plus the $65,000 Morris took. Doc. 37, Pl.'s Am. Mot. Remedies, 6 & Ex. A. Specifically, Morris and Lakeside agreed to assign the Investor warrants for 100,000 shares of common stock that Lakeside owns in another company. *Id.* Both the Investor and the SEC accept the arrangement as fully satisfying Defendants' obligations to Investor, including the $65,000 that Morris took. *Id.*

## II.

## PROCEDURAL POSTURE

Defendants ultimately consented to entry of judgments. *See* Doc. 32, J. Def. Morris; Doc. 33, J. Def. Lakeside. Those judgments leave to the Court, upon the SEC's motion, the determination of whether disgorgement and/or civil penalties are appropriate and, if so, how much. Doc. 32, J. Def. Morris, 3; Doc. 33, J. Def. Lakeside, 2–3. The consent judgments also, for purposes of any motion for disgorgement or penalties, (1) preclude Defendants from arguing that they did not violate the securities laws and (2) require the Court to take the allegations in the Complaint as true. Doc. 32, J. Def. Morris, 3; Doc. 33, J. Def. Lakeside, 3.

The SEC now moves for disgorgement and civil penalties against the Defendants. *See generally* Doc. 37, Pl.'s Am. Mot. Specifically, the SEC seeks disgorgement from Morris and

Lakeside, jointly and severally, of the $65,000 in Buckingham Fund investment returns that Morris ultimately transferred to his personal account. *Id.* The SEC also moves for $8,783.68 in prejudgment interest for the period Morris retained the funds. *Id.* at 10–11. Importantly, however, the SEC asks the Court to deem Defendants' obligations to pay the total of $73,783.68 in disgorgement and prejudgment interest satisfied by Defendants' post-suit arrangement with the Investor (Doc. 37, Pl.'s Am. Mot., 12), a point Defendants seemingly overlook in their response (*see* Doc. 42, Defs.' Resp., 11).

Finally, the SEC moves for $65,000 in civil penalties against Morris and Lakeside, "jointly and severally," as "equal to the amount of their gross pecuniary gain." Doc. 37, Pl.'s Am. Mot., 16.

The SEC does not seek disgorgement relating to the Exploration Fund because "Defendants returned those funds before the Commission filed suit." *Id.* at 11. Nor does the SEC base any of its request for civil penalties on conduct relating to the Exploration Fund.

### III.

### ANALYSIS

A.    *Disgorgement*

1.    <u>Disgorgement Before the Congressional Amendment and *Hallam*</u>

Until recently, 15 U.S.C. § 78u(d)(5) of the Exchange Act was the sole statutory basis for the "disgorgement" remedy. That section allows a court, "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws," to grant "equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). This breadth necessarily includes violations under the Investment Advisers Act of 1940. *See, e.g., SEC v. Navellier & Assocs., Inc.*, 2021 WL 5072975, at *1 (D. Mass. Sept. 21, 2021) (recognizing

disgorgement as an appropriate remedy for violations of the Investment Advisers Act of 1940 and citing 15 U.S.C. § 78u(d)(5)).

In *Liu v. SEC*, the Supreme Court addressed the SEC's power to seek disgorgement under the statutory "umbrella of 'equitable relief.'" 140 S. Ct. 1936, 1940 (2020). Guided by equity principles, the Court ultimately held that disgorgement was permissible under the statute so long as the award went to victims and did not exceed the wrongdoer's net profits. *Id.* Disgorgement, the Court held, was based on the fundamental principle "that it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Id.* at 1943 (internal alterations and quotations omitted). That notion, however, was balanced by the "countervailing equitable principle that the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* (internal alteration and quotation omitted).

> 2.      The Congressional Amendment and the Fifth Circuit's *Hallam* Opinion

In 2021, Congress added a wrinkle by amending § 78u(d)'s provisions on disgorgement. *See generally* The William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("2021 NDAA"), Pub. L. No. 116-283, sec. 6501, 134 Stat. 3388, 4625–26 (2021) (amending 15 U.S.C. § 78u). Specifically, Congress expanded § 78u(d)(3) to give district courts jurisdiction to "require disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment as a result of such violation." 15 U.S.C. § 78u(d)(3)(A)(ii). Congress also explicitly added a provision, beyond the subsection on equitable relief, that "the Commission may seek, and any Federal court may order, disgorgement." *Id.* § 78(u)(d)(7).

The Fifth Circuit recently grappled with the meaning of the congressional amendment in *SEC v. Hallam*, 42 F.4th 316 (5th Cir. 2022). Because courts "presume [Congress] intends its amendment to have real and substantial effect" and are "hesitant to adopt an interpretation of a

congressional enactment which renders superfluous another portion of that same law," the Fifth Circuit rejected the view that the amendment was merely a codification of *Liu*. *Id.* at 337 (first quoting *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) and then quoting *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019)). Rather, the Fifth Circuit held that Congress's "swift, expansive action is more consistent with a desire to curtail the Court's [*Liu*] decision" and "permit the sort of disgorgement awards" that preceded *Liu*. *Id.* at 341.

The Fifth Circuit therefore held that "Sections 78u(d)(3) and (d)(7) authorize legal 'disgorgement' apart from the equitable 'disgorgement' permitted by *Liu*." *Id.* "Legal disgorgement," as the Fifth Circuit deemed it, applies the "burden-shifting framework that prevailed before *Liu*," in which the SEC "has the burden reasonably to approximate the defendant's 'unjust enrichment' attributable to the securities violation." *Id.* "That amount may not include 'income earned on ill-gotten profits,' but it may include interest." *Id.* (citing *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)) (internal citation omitted). "If the SEC carries that burden, the burden then shifts to the defendant" to "prove that the requested amount is 'unreasonable.'" *Id.* Finally, the Fifth Circuit left open the question of whether the traditional concept of "equitable disgorgement," with *Liu*'s accompanying requirements, was still available under the equity provision of the statute. *Id.* at 343.

### 3.      The Requested Disgorgement Satisfies Pre-*Liu* "Legal Disgorgement"

The SEC did not specify whether it was seeking "equitable" or "legal" disgorgement—nor could it have, as the present motion was filed two months before *Hallam* was decided. *See* Doc. 37, Pl.'s Am. Mot. But as *Hallam* made clear, the statutory amendment is retroactive "to any action or proceeding that is pending on . . . the date of enactment." 42 F.4th at 335; 2021 NDAA § 6501(b).

The Court therefore first analyzes the SEC's motion under the "legal disgorgement" standard, which ratified pre-*Liu* caselaw. Because the remedy meets those requirements, the Court

does not reach the question of whether the remedy also complies with "equitable disgorgement" under *Liu*.

Consistent with the text of the new amendment's emphasis on "unjust enrichment," disgorgement pre-*Liu* was focused on "prevent[ing] the wrongdoer's enrichment from ill-gotten profits." *SEC v. Halek*, 537 F. App'x 576, 580 (5th Cir. 2013); *accord Blatt*, 583 F.2d at 1335 ("The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain."). Here, the SEC seeks no more in principal than the $65,000[2] that Morris wrongfully took from the Buckingham Fund, which is undoubtedly a reasonable approximation of Morris's unjust enrichment attributable to the securities violation. *See Hallam*, 42 F.4th at 341. Defendants have failed to establish that the $65,000 is an unreasonable amount. *See* Doc. 42, Defs.' Resp., 11. The SEC has therefore carried its burden as to the disgorgement award.

Additionally, joint-and-several disgorgement liability between Morris and Lakeside is proper in this case. Before *Liu*, joint and several liability was "appropriate in securities cases where . . . individuals collaborate or have close relationships in engaging in illegal conduct." *Halek*, 537 F. App'x at 580. In *Halek*, for example, the Fifth Circuit affirmed joint and several liability for an individual and two related entities where the individual owned and operated both entity companies, he controlled the websites that solicited investors, the individual and entities acted in concert and commingled funds, and they "collectively spent the funds as a single economic unit." *Id.* at 581.

---

[2] While the Court recognizes that Morris's arrangement with the Investor may ultimately provide compensation greater than $65,000 plus interest, the only disgorgement requested—and ordered—is for $65,000 plus interest.

Here, although Morris was the ultimate beneficiary of the $65,000 transfers, Morris and Lakeside are two sides of the same coin. Morris is the President of Lakeside and the only person performing Lakeside's advisory functions. Doc. 1, Compl., ¶ 11. Morris formed the Buckingham Fund, and Lakeside (acting through Morris) advised the Fund. *Id.* ¶ 24. Upon the Oil Company's bankruptcy, Morris arranged for the Investor to loan the Buckingham Fund money for reorganization and recapitalization. *Id.* ¶ 25. And Morris agreed that all the Buckingham Fund's returns would be allocated to repaying the Investor's loan. *Id.* Morris and Lakeside's conduct cannot be disentangled as it relates to the securities violation. Accordingly, the Court finds joint-and-several disgorgement liability appropriate here.

> ### i.    *The Court grants the SEC's request for prejudgment interest*

The SEC additionally requests prejudgment interest on the $65,000, in the amount of $8,783.68. The amount is calculated using the Internal Revenue Service's tax-underpayment rate from December 26, 2018 (the date of the $65,000 transfer) to February 22, 2022 (the date of Defendants' agreement with Investor). *See* 26 U.SC. § 6621(a)(2); Doc. 37, Pl.'s Am. Mot., Ex. A.

The consent judgments explicitly provide for the payment of prejudgment interest should the Court find disgorgement appropriate. Doc. 32, J. Def. Morris, 3; Doc. 33, J. Def. Lakeside, 3; *see also Hallam*, 42 F.4th at 326 (rejecting defendant's arguments against prejudgment interest as foreclosed by the consent judgment). Prejudgment interest is also consistent with the pre-*Liu* disgorgement framework and was explicitly recognized as appropriate in *Hallam. See* 42 F.4th at 341. The tax-underpayment rate represents "what it would have cost to borrow that money from the government" and therefore reasonably approximates the time value of a defendant's ill-gotten gains. *SEC v. Faulkner*, 2021 WL 75551, at *9 (N.D. Tex. Jan. 8, 2021) (Fitzwater, J.), *aff'd sub nom. SEC v. Hallam*, 42 F.4th 316 (5th Cir. 2022). The Court therefore grants the SEC's request

for prejudgment interest calculated using the tax-underpayment rate upon Morris and Lakeside in the amount of $8,783.68.

> ii.   *The disgorgement award is deemed satisfied by Defendants' post-suit arrangement with the Investor*

Importantly, however, the parties have requested that Defendants' disgorgement liability and pre-judgment interest, totaling $73,783.68, be deemed satisfied by Defendants' post-suit arrangement with the Investor. Defendants have apparently provided the Investor with warrants for 100,000 shares of common stock that Lakeside owns in another company. *See* Doc. 37, Pl.'s Am. Mot., 12 & Ex. A. Both the Investor and the SEC accept the arrangement as fully satisfying Defendants' obligations to Investor. *Id.* at 12–13.

The SEC's request that the disgorgement award be "deemed satisfied" by an alternate arrangement is not novel, though the request typically arises in the criminal restitution context. *See, e.g., SEC v. Bennett*, 2022 WL 279826, at *5 (D. Md. Jan. 28, 2022) (holding that disgorgement "will be deemed satisfied through execution of the criminal restitution order"). At least one court has raised concerns, however, over ordering disgorgement that is "purely symbolic." *SEC v. Genovese*, 553 F. Supp. 3d 24, 48 (S.D.N.Y. 2021). Specifically, in *Genovese*, the court declined to order disgorgement that was "deemed satisfied" by the criminal restitution order as contrary to equity. *Id.* Much of that court's reasoning, however, was based on *Liu* and § 78u(d)(5)'s requirement that the equitable relief be "appropriate or necessary for the benefit of investors." *Id.; see also* 15 U.S.C. § 78u(d)(5); *Liu*, 140 S. Ct. at 1947. In other words, that concern may apply with less force to the new § 78u(d)(7) which contains no such limiting language. *See* 15 U.S.C. § 78u(d)(7).

Therefore, because the disgorgement is ordered under § 78u(d)(7), the Court also orders the disgorgement award deemed satisfied by Defendants' post-suit arrangement with the Investor.

B.     *Civil Penalties*

The Court now turns to the SEC's request for $65,000 in civil penalties, equal to the "Defendants' gross pecuniary gain." Doc. 37, Pl.'s Am. Mot., 16.

Section 209(e) of the Investment Advisers Act authorizes the SEC to seek, and the Court to impose, civil penalties against a defendant who violates the statute. 15 U.S.C. § 80b-9(e)(1). The Act provides for three tiers of increasing civil penalties, with each tier setting a higher maximum-penalty amount. *See id.* § 80b-9(e). Alternatively, for each tier, a court may impose a penalty up to "the gross amount of pecuniary gain to such defendant." *Id.* § 80b-9(e)(2)(A)–(C). Besides those caps, however, "[t]he amount of the penalty shall be determined by the court in light of the facts and circumstances." *Id.* § 80b-9(e)(2)(A).

The Court is authorized to impose a first-tier penalty after a showing of a violation of the Investment Advisers Act, and such a penalty does not require additional findings by the Court. *Id.* § 80b-9(e)(2)(A). Second-tier penalties additionally require a showing that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* § 80b-9(e)(2)(B). The Court may impose a third-tier penalty if the defendant's violation also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* § 80b-9(e)(2)(C).

This Court, among others, considers five factors in determining civil penalties:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Gordon*, 2021 WL 5086556, at *11 (N.D. Tex. Nov. 1, 2021) (Boyle, J.); *see also SEC v. Illarramendi*, 260 F. Supp. 3d 166, 183 (D. Conn. 2017), *aff'd as modified*, 732 F. App'x 10 (2d Cir. 2018) (applying the five factors to determine penalties under the Investment Advisers Act).

Considering the factors above, the Court declines to impose any civil penalties in this case. The SEC concedes that the Defendants' conduct was isolated and not recurrent. Doc. 37, Pl.'s Am. Mot., 16. It further acknowledges that "investors in both of the affected funds have not suffered any losses." *Id.* Morris's conduct, while fairly egregious as to the particular Investor, was limited to a single person which he has repaid—not only for the $65,000, but also for the full loan amount owed by the Buckingham Fund. Doc. 37, Pl.'s Am. Mot. Remedies, 6 & Ex. A. Morris and Lakeside also consented to judgments in the case. Doc. 32, J. Def. Morris; Doc. 33, J. Def. Lakeside.

Additionally, Morris has filed for Chapter 7 bankruptcy. Doc. 37, Pl.'s Am. Mot., 16; Doc. 42, Defs.' Resp., 8. He is 69 years old and has Parkinson's disease, among other health complications. Doc. 42, Defs.' Resp., 8. And Morris contends that Lakeside is in the process of winding up, no longer collects any fee income, and has "debt . . . many times greater than its assets and revenue." *Id.*

On balance, given the facts, the Court finds a penalty is not necessary "to punish the individual violator and deter future violations of the securities laws." *See SEC v. Stanford Int'l Bank, Ltd.*, 2013 WL 12360438, at *6 (N.D. Tex. Apr. 25, 2013) (Godbey, J.) The SEC's request for a penalty is therefore denied.

IV.

CONCLUSION

In sum, the Court finds the SEC's disgorgement request complies with the "legal disgorgement" standard under § 78u(d)(7) and **ORDERS** disgorgement in the amount of $65,000 plus pre-judgment interest of $8,783.68, for a total of $73,783.68. However, the Court **ORDERS** that the disgorgement award is **DEEMED SATISFIED** by the Defendants' post-suit arrangement with the Investor. As for civil penalties, in light of the factors considered, the Court **DENIES** the request.

   **SO ORDERED**.

   **SIGNED: October 14, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE